## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CARIN F.,[1]

       Plaintiff,

                          **Case No. 3:22-cv-4193**

    v.                         **Magistrate Judge Norah McCann King**

MARTIN O'MALLEY,
Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Carin F. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On December 18, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since January 1, 2016. R. 70, 86, 224–30. The application was denied initially and upon reconsideration. R. 109–11, 117–29. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge ("ALJ"). R. 130. ALJ Susan Smith held a hearing on December 10, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 32–65. In a decision dated May 5, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 18, 2018, the date on which the application was filed, through the date of that decision. R. 11–25. That decision became final when the Appeals Council declined review on April 25, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 29, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[3] On October 2, 2023, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s]he must give some indication of the evidence which [s]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 47 years old when her application was filed. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 18, 2018, her alleged disability onset date, and the date of the decision. R. 13.

At step two, the ALJ found that Plaintiff's right long finger crush injury status-post surgery and arthritis was a severe impairment. *Id*. The ALJ also found that the following impairments were not severe: supraventricular tachycardia; non-ST elevation myocardial infarction; hypertension; left lower lobe pneumonia; lung and liver nodules; cystitis; mild anemia; vitamin D deficiency; irritable bowel syndrome; food allergies; acute gastritis; history of alcohol and substance abuse; and degenerative changes, described as arthritis, in the left hand. R. 14–16. The ALJ went on to find that rheumatoid arthritis, fatigue, and back/neck pain were not medically determinable impairments. R. 16.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16–17.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 17–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a cosmetologist and front desk receptionist. R. 23.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a retail marker, a router, and a photocopy machine operator–existed in the national economy and could be performed by Plaintiff. R. 23–24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 18, 2018, Plaintiff's application date, through the date of the decision. R. 24–25.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 11. The Commissioner takes the position that his decision

should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Marnie Doubek, M.D.

On January 7, 2019, Marnie Doubek, M.D., Plaintiff's primary care physician, completed a three-page, check-the-box, and fill-in-the-blank form entitled, "Medical Opinion Re: Ability To Do Physical Activities." R. 1450–53. Dr. Doubek diagnosed a finger injury on Plaintiff's right hand with chronic pain and arthritis in the fingers of Plaintiff's left hand. R. 1450. Dr. Doubek opined that Plaintiff had an unlimited ability to walk city blocks without rest and that Plaintiff could continuously sit for more than two hours at a time, for a total of at least six hours, and could stand continuously for more than two hours at a time, for a total of at least 6 hours in an eight-hour workday. *Id*. Plaintiff did not require a job that permitted shifting positions at will from sitting, standing, or walking, nor did she need to take unscheduled breaks during an eight-hour working day or elevate her legs with prolonged sitting; she did not need to use a cane or other assistive device while engaging in occasional standing/walking. R. 1450–51. According to Dr. Doubek, Plaintiff could occasionally (meaning less than one-third of a workday) lift and carry less than 10 pounds in an eight-hour working day. R. 1451. She further opined that Plaintiff had significant limitations in performing repetitive reaching, handling, and fingering: Plaintiff could not use her right hand to grasp, turn, and twist objects, but could use her left hand 75% of the time to perform these actions; she could use the fingers on both hands for fine manipulations 30% of time; and could use her arms for reaching (including overhead reaching) 100% of the

time. *Id*. She could bend and twist 100% of the time during an eight-hour workday. *Id*. Plaintiff

had no environmental restrictions. R. 1452. According to Dr. Doubek, Plaintiff could frequently

(meaning between one-third and two-thirds of the working day) twist, stoop (bend), crouch,

climb stairs, and climb ladders. *Id*. Dr. Doubek opined that Plaintiff's impairments were likely to

produce "good days" and "bad days" and, although Plaintiff was at the time out of work, once

she returned to work, it was "unclear at this time" if her impairments or treatment would cause

her to be absent from work. *Id*.

**B.    Daniel Daria, M.D.**

On May 1, 2019, Daniel Daria, M.D., conducted a consultative examination of Plaintiff

on behalf of the state agency. R. 363–70.[4] Dr. Daria noted that all of Plaintiff's "joints were

without evidence of swelling, deformity, redness, warmth, subluxation, contractures, ankylosing,

erythema, or fluid. Thoracic spine reveals no scoliosis and no kyphosis. Also no evidence of

trigger points." R. 370. Dr. Daria also specifically found the following range of motion for

Plaintiff's fingers on her right hand: 0 to 50 degrees (out of 0 to 90 degrees) flexion for the MCP

joints and PIP joints and 0 to 30 degrees (out of 0 to 70 degrees) for the DIP joints. R. 365. As to

her mental state, Plaintiff reported anxiety, depressed mood, and difficulty sleeping, but denied

auditory/visual hallucinations, delusions, any eating disorder, loss of appetite, mental or physical

---

[4] In her moving brief, Plaintiff takes issue with the ALJ's characterization of this examination as a "consultative examination," arguing that Dr. Daria was Plaintiff's family care physician. *Plaintiff's Brief*, ECF No. 9, p. 8 (citing R. 20–21). However, as the Commissioner points out, Dr. Daria performed this initial consultative examination on May 1, 2019, on behalf of a state agency, although Plaintiff may have later continued to treat with him. *See* 363 (containing an authorization and billing invoice for an "initial consultation" reflecting Dr. Daria's name with a reference to "CE OFFICE ADDRESS" and authorizing a payment of $175.00), 364 (reflecting the caption "Florida Health" and "Division of Disability Determinations"); *see also* R. 90 (reflecting state agency review that characterizes this evaluation as a "CE Rpt"), 93 (reflecting state agency review that referred to Dr. Daria's examination as a "CE").

abuse, stressors, substance abuse, and suicidal thoughts. R. 369.

Upon examination, Dr. Daria noted that Plaintiff was alert, oriented, and had intact cognitive functioning, was cooperative with the examination, manifested good eye contact, judgment, and insight, had a full range in her mood/affect and no auditory or visual hallucinations, her speech was clear, her thought content was without suicidal ideation or delusions, her thought process was logical and goal directed, and she was well oriented to name, place, and time. R. 370. Plaintiff "[r]ecall[ed] 5 objects out of 5 after apparently 20 minutes and perform[ed] two step instructions without difficulties" and "appears able to manage own finances well." *Id*. Dr. Daria assessed Plaintiff as overweight with right hand pain. *Id*.

### C.    Rudolfo Trejo, M.D.

On September 13, 2019, Rudolfo Trejo, M.D., Plaintiff's treating psychiatrist, provided a letter addressed to "To whom it may concern[,]" stating as follows:

> Mrs. F[.] is my patient and has been under my care. I am intimately familiar with her history and with the functional limitations imposed by her medical condition emotional/mental related illness.
>
> She meets the definition of disability under the Americans with Disabilities Act, The Fair Housing Act, and the Rehabilitation Act of 1973.
>
> Due to emotional/mental disability, Carin has certain limitations regarding social interaction/coping with stress/anxiety, PTSD. In order to help alleviate these difficulties, and enhance her ability to live independently and to fully use and enjoy dwelling unit you administer, I have prescribed Carin to obtain pets or emotional support animals, the presence of these animal is necessary for the emotional/mental health of Carin, because its presence will mitigate the symptoms She [sic] is currently experiencing.

R. 1427.

On September 18, 2020, Dr. Trejo completed a three-page, check-the-box, and fill-in-the-blank form entitled, "Medical Opinion Questionnaire Mental Impairments Independent of Alcoholism and Drug Addiction." R. 1455–57. Dr. Trejo diagnosed major depression. R. 1455.

10

He opined that Plaintiff had a "good" ability (meaning that her ability to function in these areas is limited, but not precluded) to maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar places; use public transportation; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; and be aware of normal hazards and take appropriate precautions.[5] R. 1455–56. Dr. Trejo further opined that Plaintiff had a "fair" ability (meaning that her ability to function in these areas is seriously limited, but not precluded) to interact with the general public; remember work-like procedures; understand and remember very short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; respond appropriately to changes in a routine work setting; and set realistic goals or make plans independently of others. *Id*. Dr. Trejo went on to opine that Plaintiff had "poor or none" (meaning no useful ability to function in these areas) ability in the following areas: carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; and deal with the stress of semiskilled and skilled work. R. 1456. According to Dr. Trejo, Plaintiff's impairments would cause her to be absent from work more than twice a month, but she could manage benefits in her own best interest. R. 1457.

---

[5] Dr. Trejo checked both the "Good" and "Fair" boxes regarding Plaintiff's ability to understand and remember detailed instructions. R. 1456. He did not check any box regarding her ability to carry out detailed instructions. *Id*.

**D.      State Agency Psychological Consultants**

Jermain Robertson, Ph.D., conducted an initial review of Plaintiff's medical record on

behalf of the state agency on May 10, 2019. R. 71–78. Dr. Robertson specifically considered the

medical evidence as it appeared in the record at that time, which included, *inter alia*, Dr. Daria's

consultative examination of May 1, 2019. R. 72–73, 75–76. Dr. Robertson opined that Plaintiff

had mild limitations in the broad functional areas of concentrating, persisting, or maintaining

pace and adapting or managing oneself, but no limitation in the areas of understanding,

remembering, or applying information and interacting with others. R. 77. Plaintiff's anxiety and

obsessive-compulsive disorders and depressive, bipolar and related disorders were nonsevere. R.

76–77. Dr. Robertson went on to explain his findings, as follows:

> Claimant is a 48-year-old who completed 2 years of college and has a history of
> semi-skilled work. Claimant is reporting PTSD and physical problems [that] limit
> ability to sustain gainful activity. FO indicates claimant had no significant mental
> limitations or difficulties during face-to-face interview.
>
> MER indicates claimant has significant physical complications and associated pain.
> Physical MER indicates claimant's current mental status is normal. Claimant found
> to have secondary depression and anxiety d/os. MSEs at physical indicate claimant
> generally alert and oriented with normal mood, affect, and judgment. Cognitive
> functioning intact/normal (see PPCS bookmarks).
>
> Claimant is able to handle personal care, gets assistance with pet care, cares for 12
> yo, needs no reminders, can prepare simple meals, do light household chores, go
> out on own, drive, shop, pay bills, count money, manage finances, reports no
> hobbies, but does engage in social interaction. Claimant reports no difficulty getting
> along with others, but has problems following instructions, handling stress and
> changes in routine.
>
> Reports regarding severity of claimant's mental impairments and their impact on
> functional ability are being assessed as partially consistent. Claimant does not
> document[] MDIs that impose some limitations on ADL functioning. However,
> severity of reported symptoms is in excess of what is supported by objective
> evidence in file. Claimant's functional restrictions are related primarily to physical
> MDIs and associated pain. Psychological limitations appear minimal and, when
> present, are secondary to physical impairments and pain.

The totality of the objective evidence in file indicates mental impairments are non-severe and claimant is mentally capable of engaging in work-related activity at this time.

R. 77–78.

Jeannie Nunez, Psy.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on October 1, 2019. R. 87–94. She agreed with Dr. Robertson that Plaintiff had mild limitations in the broad functional areas of concentrating, persisting, or maintaining pace and adapting or managing oneself, but no limitation in the areas of understanding, remembering, or applying information and interacting with others. R. 93 Dr. Nunez also agreed with Dr. Robertson that Plaintiff's anxiety and obsessive-compulsive disorders and depressive, bipolar and related disorders were nonsevere. *Id*. Dr. Nunez further noted that Plaintiff "[d]oes not allege change or worsening at recon level. Updated information received at recon level." R. 94. She went on to reiterate Dr. Robertson's explanation and also noted that, "[o]verall[,] non sever[e] mental MDI. No more than mild limitations noted. ADLs are adequate from a mental standpoint and MSE shows non severe mental difficulties. MER is given great weight." *Id*.

## V.   DISCUSSION

### A.   Mental Impairments

Plaintiff contends that this Court must remand this action because the ALJ violated the *de minimis* standard when finding that Plaintiff's mental impairments were not severe at step two of the sequential evaluation. *Plaintiff's Brief*, ECF No. 9, pp. 5–11; *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–4. Plaintiff's arguments are not well taken.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). "The step-two inquiry is a *de minimis*

screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541,

546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding

that any single impairment meets the severity threshold required at step two, any error the ALJ

made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL

5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140,

145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had

erroneously concluded that some of h[is] other impairments were non-severe, any error was

harmless."); *see also Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("Orr cannot

overcome that fact: because the ALJ progressed to a later step, any error at Step Two would not

alter the remainder of the five-step process, much less the overall outcome. And without more,

Orr provides no valid basis for remand."); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215-

NLH, 2020 WL 3073829, at *4 (D.N.J. June 10, 2020) ("The Court finds that any error in the

ALJ's step two determination as to the severity of Plaintiff's impairments of PBA, OSA, and

narcolepsy is harmless because contrary to Plaintiff's argument, the ALJ properly considered

these impairments in the overall RFC assessment."); *Edinger v. Saul*, 432 F. Supp. 3d 516, 531

(E.D. Pa. 2020) (finding that, where the ALJ found the claimant's carpal tunnel syndrome not

severe at step two but found other impairments severe at that step and went on to consider such

syndrome when crafting the RFC at step four, "[b]ecause the ALJ properly considered Ms.

Edinger's carpal tunnel in the remainder of the analysis, even if the ALJ erred at step two, any

error was harmless").

    In the case presently before the Court, the ALJ decided in Plaintiff's favor at step two,

finding Plaintiff's right long finger crush injury status-post surgery and arthritis are severe. R.

14. The ALJ also explained why Plaintiff had no limitations in the four broad areas of mental

functioning and, therefore, why Plaintiff's medically determinable mental impairments were not

severe:

> The claimant's medically determinable mental impairments of depression, anxiety, ADHD, PTSD, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. At the hearing, the claimant testified that she has difficulty to remember things, though she did not know if this might be due to age. In the Function Report, completed in August 2019, the claimant did not follow instructions well and she did not complete tasks. In contrast, she stated that she did not need reminders to take medications, she could pay bills, and she worked, to her credit (Ex. 9E). In addition, the record indicates intact cognitive, good judgment and insight, and the ability to remember five of five objects after approximately twenty-minute delay, as noted in February 2018 and May 2019 (Ex. 1F/8, 4F/41).
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant testified that she has difficulty communicating with people. She alleged that she had problems getting along with others. However, the claimant also indicated that she lived with her son and father, she took care of them, she went to the dog park or out to dinner with her cousin occasionally, and she went to work four hours a day (Ex. 9E). Moreover, the record shows that the claimant was described as cooperative with normal speech and behavior (Ex. 1F/8, 4F/41).
>
> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has no limitation. During the hearing, the claimant reported difficulty to concentrate and focus as well as inability to remember and summarize something she had watched or read. The claimant asserted that she could not pay attention long, she did not follow instructions well, and she did not complete tasks (Ex. 9E). Conversely, she also indicated that she prepared simple meals, she managed funds, and she performed grocery shopping with some assistance (Ex. 9E). In addition, the record shows that the claimant was appropriately attentive and she could follow simple two-step instructions (Ex. 1F/8, 15F/57).
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. The claimant alleged that she had some difficulty to get dressed and care for her hair, and she did not respond to stress or changes in routine

15

well (Ex. 9E). However, she testified that she did some haircuts at work during the relevant period. The claimant also took care of her elderly father, her son, and a pet (Ex. (Ex. 9E). At the hearing, the claimant stated that she takes care of her elderly father by getting groceries and ensuring he has eaten. She also has a dog. Moreover, the record shows generally normal mood and affect (Ex. 1F/8, 4F/41).

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 15–16. The ALJ went on to consider Plaintiff's mental impairments at step four when crafting the RFC. R. 17–22. The ALJ found that Plaintiff had the RFC to perform a limited range of light work as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except frequent but not constant use of hand controls with the right hand, frequent climbing ladders, ropes, or scaffolds; frequent but not constant handling on the right, and avoid concentrated exposure to fumes, odors, dust, gases, and pulmonary irritants and hazards, such as dangerous moving machinery and unprotected heights.

R. 17. In crafting this RFC, the ALJ noted that Plaintiff "alleged disability due to severe right hand injury, PTSD, and osteoarthritis[.]" *Id*. The ALJ considered Plaintiff's hearing testimony, including, *inter alia*, that Plaintiff testified that it was stressful dealing with her father's moods and that "helping her father triggers her anxiety and PTSD[;]" that she has had an emotional support dog since 2019, and takes the dog everywhere with her; that Plaintiff takes medications and does not want to increase the dosage because "they make her feel loopy"; that she has three anxiety attacks a day and sometimes she has "really bad panic attacks"; that Plaintiff was told

16

that she had major depression; that she has a hard time sitting due to anxiety and pain and can sit twenty to thirty minutes, although her anxiety makes it hard to sit more than fifteen minutes; that she did not know she had ADHD until a couple of years prior to the administrative hearing; and that, when she returned to work, her anxiety was "really bad." R. 18. The ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her subjective statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, R. 18, a finding that Plaintiff does not apparently dispute. The ALJ also considered that the record evidence reflects "generally normal daily activities with some limitations[,]" including, *inter alia*, that Plaintiff lived with and took care of her father and son; walked her son to the bus stop and took him to the gym when she could; drove her father to the doctor and made sure that her father was fed; worked part-time at the front desk and doing hair at a hair salon; fed the dog; reported some difficulty in buttoning shirts and doing her hair, but that she could perform other personal care functions independently; she prepared simple meals twice a week; did chores, although it took her longer, and she needed assistance for grocery shopping due to the heavy lifting; she paid bills and managed funds; she went with her cousin to the dog park or out to dinner "once in a while"; and she watched television and read, with some reported difficulties in maintaining attention. R. 19. The ALJ went on to consider medical opinion evidence addressing Plaintiff's mental impairments. R. 21–22. The ALJ found, *inter alia*, that the state agency psychological consultants' opinions "somewhat persuasive[,]" reasoning as follows:

> In terms of mental functioning, on May 10, 2019, Jermaine Robertson, Ph.D., a State agency psychological consultant, opined that the claimant had no more than mild limitations and therefore nonsevere mental impairments (Ex. 3A/7-8). Thereafter, on October 1, 2019, Jeannie Nunez, Psy.D., another State agency psychological consultant, adopted Dr. Robertson's prior opinion (Ex. 5A/7-8). These opinions are somewhat persuasive, as they are somewhat supported by the

17

evidence. Dr. Robertson [sic] noted that the claimant had several mental impairments of record, such as anxiety, ADHD, and major depressive disorder (Ex. 5F/8, 11F/29), though limitations reported in activities of daily living were minimal (Ex. 3A/7-8). The other evidence of record is generally consistent with the opinion, though no mild limitations are indicated. Clinical findings were generally normal. For example, at the consultative exam in May 2019, Dr. Daniel Nader Daria, M.D., consultative examiner, noted that the claimant was alert and oriented, she made good eye contact, she was cooperative with the exam, and she had intact cognitive function, good insight and judgment, full range mood and affect, clear speech, and logical and goal directed thought processes. She was able to recall five of five objects after approximately twenty minutes and perform two-step instructions without difficulties (Ex. 1F/8). Additionally, the claimant was oriented, thought processes were coherent, behavior was age appropriate, speech was clear, and she was appropriately attentive upon admission in January 2020 (Ex. 15F/57). Treatment notes from Dr. Trejo do not indicate any abnormal clinical findings and the claimant generally denied depressive symptoms and changes in sleep and thought content, as noted in November and December 2020, and January and April 2021 (Ex. 22F/11, 13, 23F/12, 16). The overall record evidence supports nonsevere mental impairments without significant functional limitations.

R. 21. In other words, although she concluded at step two—with references to the record—that Plaintiff's depression, anxiety, ADHD, and PTSD were not severe, R. 15–16, the ALJ nevertheless went on to consider those mental impairments and alleged limitations flowing from them at step four of the sequential evaluation process, explaining why those mental impairments warranted no functional limitations in the RFC. R. 17–22. Accordingly, even if the ALJ erred in not finding Plaintiff's mental impairments severe at step two, any such error at step two was harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Orr*, 805 F. App'x at 88; *Rafine*, 2020 WL 3073829, at \*4; *Edinger*, 432 F. Supp. 3d at 531; *Auriemma*, 2015 WL 5097902, at \*6.

Plaintiff, however, raises a number of challenges to the ALJ's consideration in this regard. *Plaintiff's Brief*, ECF No. 9, pp. 5–11; *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–4. Plaintiff complains that the ALJ did "not discuss any evidence related to Ms. F[.]'s mental impairments prior to May 2019" and that she "ignores" Plaintiff's "mental health treatment from

18

August 2015 through April 2019 entirely[,]" thus requiring remand. *Plaintiff's Brief*, ECF No. 9, p. 6 (citing R. 21–22, 703–32); *see also Plaintiff's Reply Brief*, ECF No. 11, p. 2.

The Court is not persuaded that this issue requires remand. As a preliminary matter, at step two of the sequential evaluation process, the ALJ specifically cited—three times—a treatment record from February 2018 when noting that the examination revealed, *inter alia*, a normal mood and affect and good judgment. R. 15 (citing Exhibit 4F/41, R. 547, when considering the broad functional areas of understanding, remembering, or applying information; interacting with others; and adapting and managing oneself). To the extent that the ALJ, at step four of the sequential evaluation, failed to specifically cite to any evidence predating May 2019, any such failure is, at most, harmless.

Plaintiff complains that the ALJ failed to consider Plaintiff's mental health records from August 2015 through April 2019 but, in making this complaint, Plaintiff simply points to evidence without explaining how such evidence supports her allegation of reversible error in the ALJ's decision at steps two or four. *See Plaintiff's Brief*, ECF No. 9, p. 6 (citing, *inter alia*, R. 703–32); *Plaintiff's Reply Brief*, ECF No. 11, p. 2 (same); *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Accordingly, Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, simply has not established that the ALJ's failure at step four to expressly cite to evidence dated prior to May 1, 2019, is anything other than, at most, harmless error. *See id.*; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Plaintiff next challenges the ALJ's observation that Plaintiff reported "no depressive symptoms, no changes in sleep habits, no changes in thought content" during Dr. Trejo's examination in September 2020. *Plaintiff's Brief*, ECF No. 9, p. 7 (citing R. 1474) (internal quotation marks omitted); *see also* R. 22 (citing Exhibit 22F/17, R. 1474). Plaintiff specifically argues that the ALJ's consideration in this regard "ignores" Plaintiff's "numerous" complaints of sleep disturbance and reports of symptoms of anxiety; diagnosis of insomnia and prescription of Lorazepam and other medications to treat her insomnia; and "her hospitalization for supraventricular tachycardia with anxiety[.]" *Id.* (citations omitted). The Court is not persuaded that this issue requires remand. As a preliminary matter, this Court has already explained that the ALJ found that Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, R. 18, a finding that Plaintiff does not apparently dispute. To the extent that Plaintiff relies on diagnoses, it is important to note that "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). While Plaintiff points to medication for insomnia, Plaintiff does not explain how this medication establishes reversible error. *See Plaintiff's Brief*, ECF No. 9, p. 7; *cf. Gross v. Heckler*, 785 F.2d 1163, 1166 (3d Cir. 1986) ("If a symptom can reasonably be controlled by

medication or treatment, it is not disabling.") (citations omitted). Plaintiff also relies on her

hospitalization in January 2020, during which she was assessed with supraventricular

tachycardia; pneumonia; anxiety; and non-ST elevation myocardial infarction. *Plaintiff's Brief*,

ECF No. 9, p. 7 (citing R. 1082). Again, however, Plaintiff simply points to this evidence

without explaining how this evidence establishes that the ALJ committed harmful error at either

step two or step four. *See id.*; *see also Shinseki*, 556 U.S. at 409–10; *Padgett*, 2018 WL 1399307,

at *2. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence

that would justify the opposite conclusion, as long as the 'substantial evidence' standard is

satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*,

667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose

their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r*

*of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not

uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve

that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Moreover, even if

Plaintiff continued to experience some symptoms, such evidence does not establish Plaintiff was

disabled. *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) ("[W]hile Welch's pain may be

constant and uncomfortable, it is not disabling or severe."); *see also Null v. Saul*, No. CV 2:18-

759, 2019 WL 2867201, at *3 (W.D. Pa. July 3, 2019) ("It is well-established, however, that a

claimant need not be pain free or symptom free to be found not disabled. Rather, the claimant

must still show he is unable to perform substantial gainful activity. . . . As set forth above, the

ALJ here did not disagree that Plaintiff experiences significant, and sometimes increasing, pain;

he found, however, that the pain was sufficiently controlled with medication and other treatment

21

to permit Plaintiff to perform some substantial gainful activity.") (internal citations omitted); *McIntyre v. Berryhill*, No. CV 17-2176, 2018 WL 5962476, at *5 (D.N.J. Nov. 13, 2018) ("It must be remembered, however, that to be fit for work, a claimant need not be pain-free or symptom-free.") (citing *Welch*, 808 F.2d at 270).

Plaintiff goes on to complain that the ALJ "repeatedly cites to the 'consultative examination' performed in May 2019[,]" but contends that "this examination was performed by Dr. Daria, a family care physician[,]" who "is not a mental health specialist" and who "performed no formal mental health testing[.]" *Plaintiff's Brief*, ECF No. 9, p. 8 (citing R. 21–22, 366–70). Plaintiff takes the position that Dr. Daria's examination "is not a mental health consultative examination, and it should not be relied upon to reject the opinion of a treating mental health professional or to allow the ALJ to ignore other evidence of mental symptoms and limitations." *Id*. As previously noted, Plaintiff's first visit with Dr. Daria was in May 2019, when that physician was listed as a consultative examiner. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10, pp. 18–19 (citing, *inter alia*, R. 90, 93, 364). The Commissioner also contends that Plaintiff has cited no evidence that the ALJ thought that Dr. Daria was a health care specialist. *Id*. at 19. Plaintiff replies that the issue is not whether Dr. Daria was a treating physician or consultative examiner, but that this physician was a family care practitioner and not a mental health specialist. *Plaintiff's Reply Brief*, ECF No. 11, p. 2. According to Plaintiff, Dr. Daria's "opinion" regarding Plaintiff's "mental health symptoms and limitations was simply not entitled to the persuasiveness it was given by the ALJ because it was outside her area of specialization." *Id*. at 1–2.

Plaintiff's arguments in this regard are not well taken. The generally normal mental findings from Dr. Daria's May 2019 consultative examination were but one piece of evidence

22

that the ALJ considered when crafting the RFC and when considering opinion evidence; the ALJ did not "ignore" other mental health evidence. R. 21–22 (considering, *inter alia*, that Plaintiff was oriented, her thought processes were coherent, her behavior was age appropriate, her speech was clear, and she was appropriately attentive upon admission in January 2020; that Dr. Trejo's treatment notes "do not indicate any abnormal clinical findings and the claimant generally denied depressive symptoms and changes in sleep and thought content, as noted in November and December 2020, and January and April 2021"; that "the subjective section [of Dr. Trejo's treatment notes] noted some depressive symptoms, such as in September 2019, though subsequent objective exams did not include any abnormal clinical findings, including in September 2019, December 2019, December 2020, and April 2021"; that "other evidence shows normal clinical findings including attention and memory, including in May 2019 and January 2020"; that Dr. Trejo's notes from September 3, 2020, reflect "no complaints of mental health symptoms, no subjective findings of such symptoms, and no objective clinical findings regarding mental health limitations"; that Dr. Trejo's treatment notes from September 18, 2020, "do not indicate any reports of mental health symptoms" and that, instead, "'no depressive symptoms, no changes in sleep habits, no changes in thought content' w[ere] noted in the subjective section") (citations omitted); *cf. also Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 121 (3d Cir. 2020) (finding that ALJ was "entitled to discount" a treating source's earlier assessment "where it was undermined by the more 'detailed, longitudinal picture" provided by his later medical assessments[,]" which revealed that the claimant was "consistently calm and cooperative upon exam, and her prognosis was 'good'" and objective evidence supported the ALJ's finding that mental impairments did not prevent the claimant from engaging in substantial gainful activity where "she was consistently noted to be calm and cooperative, reportedly got along with

immediate family, friends, and neighbors, could shop in stores by herself, attended community events, and had consistently normal findings with her cognition, memory, speech, judgment and insight"). Moreover, and contrary to Plaintiff's characterization, the ALJ did not find Dr. Daria's "opinion" persuasive or more persuasive than Dr. Trejo's opinions: the ALJ simply considered Dr. Daria's objective findings and report of Plaintiff's subjective complaints/lack of complaints in that physician's May 2019 consultative examination, none of which qualify as a medical opinion under the regulations. *See* 20 C.F.R. § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed" in later paragraphs in this regulation, which include a claimant's ability to perform physical and mental demands of work activities, ability to perform other demands of work, and ability to adapt to environmental conditions); *Gambriel v. Kijakazi*, No. 1:20-CV-01393, 2022 WL 808496, at *6 (M.D. Pa. Mar. 16, 2022) ("Observations of symptoms and diagnoses without an opinion of functionality are not considered medical opinions.") (citations omitted); *Scheel v. Comm'r of Soc. Sec.*, No. CV 20-5077, 2021 WL 4477163, at *4 (E.D. Pa. Sept. 30, 2021) ("Dr. Shipkin's letter does not qualify as a medical opinion that the ALJ was required to evaluate. Indeed, Dr. Shipkin never opined on Scheel's functional limitations or what activities she could or could not perform in a work setting, or otherwise articulated Scheel's work-based limitations. Accordingly, Dr. Shipkin's letter does not contain an 'opinion' as defined in the regulations.").

To the extent that Plaintiff complains about the ALJ's consideration of Dr. Trejo's opinions, Plaintiff's arguments are not well taken. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests"

24

sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, an ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

---

[6] As previously noted, Plaintiff's application was filed on December 18, 2018.

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

26

At step four, when finding that Plaintiff had the RFC to perform a limited range of light work, R. 17, the ALJ found, *inter alia*, that Dr. Trejo's opinions were unpersuasive, explaining as follows:

> On September 13, 2019, Rudolfo Trejo, M.D., the claimant's treating psychiatrist, provided correspondence wherein he opined that the claimant had "certain limitations" regarding social interaction and coping with stress, anxiety, and PTSD. He prescribed an emotional support animal as necessary for her emotional and mental health, as it would mitigate her psychological symptoms (Ex. 17F/53). This opinion is not persuasive because it is not supported by the evidence. Dr. Trejo prescribes medications for anxiety, ADHD, depression, and substance dependence (Ex. 17F/42, 51). However, treatment notes do not indicate significant mental limitations. For example, the subjective section noted some depressive symptoms, such as in September 2019, though subsequent objective exams did not include any abnormal clinical findings, including in September 2019, December 2019, December 2020, and April 2021 (Ex. 17F/36, 51, 22F/11, 23F/12). Additionally, other evidence shows normal clinical findings including attention and memory, including in May 2019 and January 2020, which is inconsistent with the opinion (Ex. 1F/8, 15F/57). Moreover, at the hearing, the claimant testified that she got the dog "already trained," though she did not specify if it was certified. Additionally, it appears that the claimant had a pet in the home in August 2019 (Ex. 9E), prior to the correspondence prescribing the animal. Notwithstanding, a support dog does not necessarily indicate a functional abnormality. It is not clear there are any guidelines for when an emotional support animal should be prescribed. The overall record evidence supports the residual functional capacity assessment outlined herein.
>
> On September 18, 2020, Dr. Trejo, M.D. opined that the claimant had poor or no ability to carry out short and simple instructions, maintain regular attendance and be punctual within customary tolerances, make simple work-related decisions, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and deal with stress of semi-skilled or skilled work. The claimant had generally fair to good ability to perform the remaining mental tasks, such as accepting instruction from supervisors, getting along with coworkers, understanding and remembering detailed and short, simple instructions, interact with the general public, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being unduly distracted, complete a normal workday or workweek without interruptions from psychologically based symptoms, and respond appropriately to changes in a routine work setting (Ex. 21F).
>
> This opinion is unpersuasive because it is not supported by Dr. Trejo's treatment notes. For instance, on September 18, 2020, the date of this opinion, Dr. Trejo's treatment notes do not indicate any reports of mental health symptoms. Rather, "no

depressive symptoms, no changes in sleep habits, no changes in thought content" was noted in the subjective section (Ex. 22F/17). There are no objective or clinical findings noted and Dr. Trejo did not assess a mental health diagnosis on that date, though he prescribed Adderall (Ex. 22F/17-18). At a prior visit on September 3, 2020, there were no complaints of mental health symptoms, no subjective findings of such symptoms, and no objective clinical findings regarding mental health limitations. Nonetheless, Dr. Trejo assessed anxiety disorder at that time and prescribed Valium and Wellbutrin (Ex. 22F/19-21). In fact, treatment notes in 2021 are devoid of any clinical findings or reports of symptoms, though mental health medications are continually prescribed (Ex. 23F). Additionally, the opinion is inconsistent with other evidence, such as the generally normal findings at the consultative exam in May 2019 and the hospital intake in January 2020 (Ex. 1F/8, 15F/57). The overall record evidence supports the residual functional capacity as outlined herein.

R. 21–22. As detailed above, the ALJ specifically considered the supportability and consistency factors required by the regulation and explained why Dr. Trejo's own findings and treatment, as well as the other record evidence, rendered his opinions unpersuasive. *See id*. Accordingly, the ALJ properly considered Dr. Trejo's opinions. *See* 20 C.F.R. § 416.920c(c)(1)–(2); *Levan v. Kijakazi*, No. CV 21-1829, 2023 WL 424273, at *7 (E.D. Pa. Jan. 25, 2023) (finding that substantial evidence supports the ALJ's determination that a medical opinion was not persuasive where the physician's mental status examination findings conflicted with that physician's extreme limitations and where that opinion was inconsistent with other evidence in the record, including, *inter alia*, "other medical providers' notations that Plaintiff's psychiatric symptoms were unremarkable"); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("Here, the ALJ explicitly considered the supportability and consistency factors relative to Mr. Martelo's opinion by stating that the opinion was not well supported by and was inconsistent with the mental health records. R. at 27. The ALJ had no further responsibility to cite to the record, which contained over 1,000 pages."); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under the

28

applicable regulations, where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record").

Plaintiff complains that the ALJ rejected Dr. Trejo's opinions "based on nothing more than her lay reading of the mental health treatment notes of record[.]" *Plaintiff's Brief*, ECF No. 9, p. 10 (citing R. 21). This Court disagrees. As detailed above, the ALJ did not err when considering, *inter alia*, benign mental status examination findings in determining how persuasive she found Dr. Trejo's opinions. R. 21–22. Moreover, the ALJ found the reviewing state agency psychological consultants' opinions "somewhat persuasive[,]" agreeing with their findings that Plaintiff's mental impairments were nonsevere. R. 21. In any event, to the extent that Plaintiff suggests that the ALJ must support every RFC limitation with a matching medical opinion, *Plaintiff's Brief*, ECF No. 9, pp. 9–10; *Plaintiff's Reply Brief*, ECF No. 11, p. 3, Plaintiff is mistaken. As previously discussed, it is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). Accordingly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the

decision." *Chandler*, 667 F.3d at 362. Accordingly, Plaintiff has not persuaded this Court that the ALJ's decision to discount Dr. Trejo's requires remand on this basis.

Finally, Plaintiff complains that, "[i]f the ALJ had doubts about the extent of Ms. F[.]'s mental symptoms and limitations, she could have granted Ms. F[.]'s request for an actual psychological evaluation[.]" *Plaintiff's Brief*, ECF No. 9, p. 10 (citing R. 11, 38; 20 C.F.R. § 416.919a(b)). In the alternative, Plaintiff argues that the ALJ could have ordered testimony from a medical expert. *Id*. at 11 (citing HALLEX I-2-5-32). Plaintiff contends that "[w]hat the ALJ could not do was reject the opinion of the treating medical source with no contradictory evidence and based on nothing more than lay speculation." *Id*. Plaintiff also insists that the ALJ's "failure to assist" Plaintiff in "developing the record here was a violation of her independent duty and an abuse of discretion." *Plaintiff's Reply Brief*, ECF No. 11, p. 4.

Plaintiff's arguments are not well taken. It is true that "ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). "The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." *Money*, 91 F. App'x at 215 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)). "[W]here a claimant is represented by counsel before the ALJ, an

30

ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the claimant.'" *Crocker*, 2017 WL 1181584, at *4 (quoting *Cartagena v. Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)).

In addition, an ALJ retains the discretion, but not the duty, to order a consultative examination. *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontact treating sources and stating that "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method"). For example, an ALJ may seek a consultative examination if the claimant's medical sources cannot or will not provide sufficient medical evidence, or to resolve an inconsistency in the evidence, or if the evidence as a whole is insufficient to make a determination. 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical

31

or mental examinations or tests.") (emphasis added); § 416.919a(b) ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added); § 416.920b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense") (emphasis added).

Similarly, an ALJ is vested with broad discretion in determining whether to consult with a medical expert. *Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006); *see also* 20 C.F.R. § 416.929(b) ("At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) *may* ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms.") (emphasis added); *Miguel v. Comm'r of Soc. Sec.*, 129 F. App'x 678, 680 (3d Cir. 2005) (The regulations do not require that a medical expert testify at the claimant's hearing.").

In the present case, the ALJ denied Plaintiff's counsel's request during the hearing for a consultative examination, explaining as follows:

> During the hearing, the claimant's representative requested that the undersigned refer the claimant for post hearing consultative evaluation with a physical medicine rehab doctor, orthopedist, or specialist as well as psychological consultative exam. The representative noted that they did not believe that the consultative examination in the record had been properly performed and that testimony would indicate such. The undersigned has considered all of the evidence of record and the factors for purchasing a consultative examination as set forth in 20 CFR 416.919. The factors for referral for a consultative examination are not indicated in this case (20 CFR 416.919a(1)-(5). Moreover, the claimant's representative did not otherwise object to the exhibits of record and testimony did not indicate that the consultative exam was inadequately performed. Therefore, the claimant's request is denied.

32

R. 11. In other words, the ALJ considered years of record evidence—which she detailed at length at step four of the sequential evaluation process, as described above—and reasonably exercised her discretion in deciding that she had sufficient information on which to base a disability determination. *Id.*; *see also* R. 14–24. The Court therefore concludes that the ALJ properly exercised her discretion when she did not order a psychological (or physical) consultative examination. *See Money*, 91 F. App'x at 215; *Thompson*, 45 F. App'x at 149; *Haganey*, 2019 WL 192901, at *2; *see also Ali v. Comm'r of Soc. Sec.*, No. CV 17-12911, 2019 WL 3369694, at *6 (D.N.J. July 25, 2019) ("An ALJ has no duty to request commissioner sponsored examinations merely because existing records do not establish disability.") (citations omitted). For the same reasons, the Court is not persuaded that the ALJ erred or abused her discretion in failing to order the testimony of a medical expert. *See* 20 C.F.R. § 416.929(b); *Hardee*, 188 F. App'x at 129; *Miguel,* 129 F. App'x at 680.

For all these reasons, the ALJ's consideration of Plaintiff's mental impairments at steps two and four enjoy substantial support in the record.

**B.**      **Hand Impairments**

Plaintiff next argues that the Court must remand this action because the ALJ failed to adopt manipulative limitations sufficient to accommodate Plaintiff's hand impairments. *Plaintiff's Brief*, ECF No. 9, pp. 11–14; *Plaintiff's Reply Brief*, ECF No. 11, pp. 4–5. Plaintiff specifically argues that the ALJ found that Plaintiff's right long finger crush injury status post-surgery was a severe impairment, "inherently finding" that Plaintiff had "significant limitations" on her ability to use her right hand to perform basic work-related activities[,]" yet the ALJ included a restriction for only "frequent but not constant" handling and use of hand controls with her right hand. *Plaintiff's Brief*, ECF No. 9, pp. 11–12; *Plaintiff's Reply Brief*, ECF No. 11, pp.

33

4–5. Plaintiff also contends that, although the ALJ found that Plaintiff's arthritis in her left hand was not severe, the ALJ found this condition to be a medically determinable impairment and she argues that the ALJ should therefore have included limitations in the use of Plaintiff's left hand in the RFC. *Plaintiff's Brief*, ECF No. 9, p. 11-12. According to Plaintiff, the ALJ substituted her own lay opinion for that of Dr. Doubek when she failed to include such limitations in the RFC. *Id*. at 12–14; *Plaintiff's Reply Brief*, ECF No. 11, p. 5.

Plaintiff's arguments are not well taken. To the extent that Plaintiff relies on the ALJ's finding at step two—*i.e.*, that Plaintiff's right long finger crush injury status post-surgery was a severe impairment and that her left-hand arthritis was a medically determinable impairment—the Court notes that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*.

Next, in crafting the RFC for, *inter alia*, "frequent but not constant use of hand controls with the right hand" and "frequent but not constant handling on the right," R. 17, the ALJ considered Dr. Doubek's opinion regarding manipulative limitations, but ultimately found that opinion unpersuasive, reasoning as follows:

On January 7, 2019, Marnie Doubek, M.D., the claimant's primary care physician, opined that the claimant could sit, stand, and walk at least six hours of an eight-

34

hour day. She could lift/carry less than ten pounds occasionally and she could not use her right hand to grasp, turn, or twist objects and use her right fingers 30% of an eight-hour workday for fine manipulation. She could use her left hand to grasp, turn, and twist objects 75 % of an eight-hour workday, use the left fingers 30% of the day for fine manipulation, and use the left and right arms 100% for reaching. Dr. Doubek further opined that the claimant would have good and bad days, though he [sic] indicated that she would not require additional unscheduled breaks and he [sic] could not determine if she would have absences from work (Ex. 20F). This opinion is unpersuasive because it is not supported by Dr. Doubek's treatment notes. The undersigned has considered the treating relationship with the claimant over a number of years. However, Dr. Doubek only treated the claimant's hands on one occasion – the date he [sic] completed the Title XVI paperwork she requested (Ex. 4F/12). On that date, Dr. Doubek noted the right third and fourth fingers had some swelling, mild misalignment, limited flexion, and diminished sensation. However, they were nontender on exam. The left second and fifth dorsal interphalangeal joints had swelling, tenderness, mild erythema, limited flexion, and palpable nodules. Treatment included Celebrex and referral to hand surgeon (Ex. 4F/10, 12). Although these findings warrant some limitations, they do not support the degree of limitations outlined in the opinion. In fact, the opinion is inconsistent with other evidence of record. For example, although the claimant had 3/5 grip strength, decreased flexion, and some difficulty performing tasks with the right hand, she was able to open a jar, turn a doorknob, pick up coins, button and unbutton with the right hand with difficulty. The left hand had 5/5 strength and no difficulty to perform these tasks (Ex. 1F/3, 8). The overall record evidence supports the residual functional capacity assessment.

R. 20. The ALJ went on to further explain the RFC manipulative limitations as follows:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by totality of the evidence. The record shows a right hand crush injury resulting in third digit fracture (Ex. 2F/11), two open reduction internal fixation procedures in 2015 (Ex. 2F/12, 4F/47), bony fusion on imaging in 2018 (Ex. 4F/122), right long finger residual arthritis (Ex. 4F/42), physical exams indicating some difficulties to perform tasks with the right hand, no difficulties with the left hand (Ex. 1F/3, 8), and recommended orthopedic monitoring (Ex. 4F/42). Mindful of this evidence, the claimant is limited to a range of light work due to limitations to lift and carry. She is further limited to frequent climbing of ladders, ropes, or scaffolds, and frequent operating hand controls and handling with the right hand, because of some grip weakness and difficulty performing tasks with the right hand noted on exams.

R. 22. This finding reflects the ALJ's express consideration of the supportability and consistency factors required by the applicable regulation. 20 C.F.R. § 416.920c(c)(1)−(2). Moreover, the ALJ explained why Dr. Doubek's findings and treatment notes as well as other record evidence

rendered this physician's extreme opinion unpersuasive. *See id*. Substantial evidence supports the ALJ's consideration in this regard. *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug. 23, 2022) (concluding that substantial evidence supported the ALJ's finding a medical opinion not persuasive because "the examination findings of the longitudinal record are not consistent with these rather extreme limitations," and the ALJ summarized medical evidence, including physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation, and normal reflexes except the plantar reflexes that were zero) (internal quotation marks omitted); *Debevits*, 2021 WL 2590140, at *4.

Although Plaintiff complains that the ALJ relied on her lay opinion when finding Dr. Doubek's opinion unpersuasive, the ALJ's analysis, recounted above, belies that contention. R. 20, 22. Moreover, the ALJ found the reviewing state agency medical consultants' opinions "persuasive[,]" agreeing with their finding that Plaintiff could, *inter alia*, frequently operate hand controls with her right upper extremity. R. 20–21. In any event, to the extent that Plaintiff suggests that the ALJ must support every RFC limitation with a matching medical opinion, *Plaintiff's Brief*, ECF No. 9, pp. 13–14; *Plaintiff's Reply Brief*, ECF No. 11, p. 5, this Court has already explained that it is the ALJ, not physicians or consultants, who must make the ultimate RFC determination and that an ALJ is not precluded from crafting RFC limitations without a matching medical opinion. *See* 20 C.F.R. § 416.946(c); *Chandler*, 667 F.3d at 361–62; *Titterington*, 174 F. App'x at 11; *Mays*, 78 F. App'x at 813.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's manipulative limitations in the RFC are consistent with the evidence and enjoy substantial support in the record, as does her consideration of Dr. Doubek's opinion.

VI.     **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 27, 2024                  _____*s/Norah McCann King*_____
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE